


The relief described hereinbelow is SO ORDERED.

Signed December 13, 2006.

ROBERT D. BERGER
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

LASHON CARSON,
Debtor.

Case No. 05-24327
Chapter 7

**MEMORANDUM OPINION AND ORDER GRANTING IN PART TRUSTEE'S MOTION TO COMPEL TURNOVER**

This matter is before the Court on the Trustee's Motion to Compel Turnover of Bankruptcy Estate Property alleged to be a portion of Debtor's tax refund.[1] The Court, having reviewed the relevant pleadings and having considered counsel's argument, grants the motion but limits relief to $223.95 as set forth below.

***Findings of Fact***

The parties do not dispute the facts.[2] Debtor filed for Chapter 7 relief on September 13, 2005. Christopher J. Redmond was appointed the Chapter 7 Trustee. The Debtor's Disclosure

[1] Doc. No. 13. Debtor LaShon Carson appears by David A. Reed, Kansas City, Kansas. Trustee Christopher J. Redmond appears in person.

[2] Doc. Nos. 18 and 19.

of Compensation of Attorney reflects Debtor's counsel agreed pre-petition to represent Debtor for a flat fee of $750.00. Prior to the petition date, Debtor executed an Assignment of Anticipated Income Tax Refund (the "Assignment"). The Assignment states, in relevant part:

> LaShon Carson . . . assigns to her attorney, David A. Reed, . . . an interest in her anticipated 2005 federal and state income tax refunds equivalent to $750.00, representing the unpaid portion of her attorney fees, to satisfy services being rendered in her Chapter 7 bankruptcy proceeding.

Debtor's 2005 federal income tax return generated a refund of $4,745.00,[3] and her 2005 state income tax return generated a refund of $723.00. Thus, Debtor received an aggregate of $5,468.00 (the "Refund"), which she delivered to her bankruptcy counsel pursuant to the Assignment. The petition date was 256 days into the year (70.14% of the year was pre-petition). According to the parties, the pro rata portion of the Refund attributed to pre-petition is $3,835.26 and the post-petition portion is $1,632.74.

Debtor's counsel deducted $750.00 from the pre-petition portion and forwarded $3,085.26 to the Trustee. On May 10, 2006, the Trustee moved for the Court to direct Debtor to turn over the $750.00.

***Analysis***

This contested matter is a core proceeding over which the Court has jurisdiction.[4]

The issue as presented by the parties is whether the Assignment should be paid from the pre- or post-petition portion of the Refund. The parties agree the fee is reasonable and should be paid in full. Further, the parties have no argument concerning the validity of the Assignment. Rather, Debtor's counsel deducted the payment solely from the pre-petition portion of the

---

[3] The refund was $4,996.00; however, after deducting a $251.00 tax preparation fee, to which the Trustee does not object, the Debtor received $4,745.00.

[4] 28 U.S.C. §§ 157 and 1334.

Refund, while the Trustee asserts the fee should be paid from the post-petition portion of the Refund. Debtor argues that because the fee agreement was entered into pre-petition, it is a pre-petition debt and should be deducted entirely from the pre-petition portion of the Refund. The Trustee argues the Court should apply the equitable doctrine of marshaling and require the fee be paid from the Debtors' post-petition portion of the Refund.

Court-ordered marshaling requires (1) the existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his claim from either of the two funds, while the other creditor has access to only one fund.[5] Generally, marshaling prevents a senior lienholder from arbitrarily exhausting the only collateral of a junior lienholder when the senior creditor has other collateral while the junior creditor does not.[6]

In this case, the Trustee argues all three elements are met. First, the Trustee identifies Debtor's counsel and the pre-petition creditors as the two creditors in common with the Debtor. Second, the Trustee defines the two funds as the pre- and post-petition portions of the Refund. Lastly, the Trustee assumes the Assignment makes both the Debtor's pre- and post-petition Refund available to Debtor's counsel, while other pre-petition creditors have recourse only to the pre-petition Refund.

The parties ignore the Assignment's effect on the extent to which the Refund became property of the estate. Assignments of tax refunds for payment of Chapter 7 debtors' counsel is common practice. When the assignment is made to pay a flat fee retainer, the money does not

---

5 *Morris v. Steele (In re Steele)*, Adv. No. 04-5265 (Bankr. D. Kan. filed Nov. 17, 2005) (J. Nugent) *available at* http://www.ksb.uscourts.gov/opinions/default.htm (citing *Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 160 (Bankr. D. Kan. 1988)).

6 *Meyer v. U.S.*, 375 U.S. 233, 237 (1963).

become property of the estate. The Supreme Court noted that payment for Chapter 7 debtors' counsel is protected by counsel's ability to accept a retainer to cover their standard fee and the cost of filing the petition.[7] In fact, after *Lamie*, a retainer is one of the few avenues by which Chapter 7 debtors' counsel may be paid without delineating between pre- and post-petition services. The *Lamie* retainer exception, as it has become known, allows a debtor to pay Chapter 7 counsel a reasonable fee in advance of filing.[8] The *Lamie* retainer exception applies to flat fee retainers because such retainers become the attorney's property when paid.[9]

Under Kansas law, the assignment of a contingency such as a tax refund is an absolute transfer. This method of payment is akin to a cash retainer. The Bankruptcy Code states the estate is comprised of all the debtor's legal and equitable interests in property *as of the commencement of the case.*[10] Generally, in the absence of an assignment, a debtor's tax refund attributable to pre-petition withholding is property of the estate.[11] However, the estate may take no greater interest in property than that held by the debtor as of the petition date.[12] The existence and scope of the debtor's interest is determined by state law.[13] Under Kansas law, "an assignment passes all the assignor's title or interest to the assignee, and divests the assignor of all right of control over the subject matter of the assignment."[14] Any right or interest in property,

---

7 *Lamie v. United States Trustee*, 540 U.S. 526, 537-38 (2004).

8 *Id.*

9 *In re Wagers*, --- B.R. ---, 2006 WL 3411857, at *5 (10th Cir. B.A.P. 2006) (citing *In re CK Liquidation Corp.*, 343 B.R. 376, 383 (D. Mass. 2006)).

10 11 U.S.C. §541(a)(1) (emphasis added); *In re Rash*, 22 B.R. 323, 324 (Bankr. D. Kan. 1982).

11 *Segal v. Rochelle*, 382 U.S. 375, 384 (1966).

12 11 U.S.C. §541; *In re Martin,* 167 B.R. 609, 617 (Bankr. D. Or. 1994).

13 *Butner v. United States*, 440 U.S. 48, 55 (1979).

14 *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 861, 528 P.2d 1198, 1203 (Kan. 1974).

whether vested or contingent, may be assigned, sold, or bartered.[15] Once property or the expectancy to receive property is assigned by valid assignment, the assignee's claim is prior and paramount to the assignor and anyone claiming on the assignor's behalf.[16] Specifically, a tax refund assignment for the payment of a flat fee retainer is an absolute and unconditional transfer because the fee immediately becomes the attorney's property.[17] The assignor retains no legal or equitable interest in assigned funds.[18] Thus, the debtor, and therefore the estate, can take no greater interest in the refund than the debtor's interest in any unused portion of the refund as of the petition date.

Since there is no question that the entire $750 retainer shall be paid from the Refund, the issue is whether the Court shall prorate the entire Refund before deducting the retainer or deduct the retainer prior to dividing the Refund into its pre- and post-petition components. In *Steele*, the Court faced a similar question; however, *Steele* had very different facts. *Steele* involved the government's post-petition setoff of a nondischargeable child support obligation. *Steele* did not involve a pre-petition transfer by assignment. Thus, as of the petition date, the debtor, and therefore the estate, had an expectancy in the entire refund. After the government made the setoff post-petition, the debtor argued the Court should prorate the net refund after setoff rather than the gross refund prior to setoff. *Steele* found the debtor benefitted from the setoff because it satisfied a debt which could have been collected from him post-discharge. Thus, the Court

---

[15] *Chatterton v. Clayton*, 150 Kan. 525, 95 P.2d 340, 341-42 (Kan. 1939) (expectancy of inheritance is properly assignable, and assignor acquires no interest when the inheritance is later distributed).

[16] *Id.* (prior assignment defeats a garnishment).

[17] *In re Wagers*, --- B.R. ---, 2006 WL 3411857, at *5 (citing *In re CK Liquidation Corp.*, 343 B.R. at 383); *In re Lagerstrom*, 300 F. Supp. 538, 541 (S.D. Ill. 1969).

[18] *Chatterton v. Clayton*, 150 Kan. 525, 95 P.2d at 342.

refused to give the debtor another benefit by prorating only the net proceeds of the refund.[19] The Court applied the proration to the entire refund as it would have existed as of the petition date.

In this case, prorating the entire Refund provides a false starting point. The parties divide the entire $5,468.00 Refund into $3,835.26 pre-petition and $1,632.74 post-petition. However, because of the Assignment, $5,468.00 was not available for the parties to divide. The Debtor parted pre-petition with her entire ownership, title, and interest in the Refund to the extent of $750. Thus, on the petition date, neither the Debtor nor the estate had any expectancy to receive those funds. One fund, the entire Refund, transferred to Debtor's counsel pre-petition. Until the Refund was reduced by the amount of the Assignment, the Debtor, and therefore the estate, had no claim to *any portion* of the Refund. The entire Refund could not create the two funds upon which the Trustee relies to apply the doctrine of marshaling. Neither pre- nor post-petition funds existed from which to marshal payment. The ownership and right to the entire Refund belonged to Debtor's counsel until his $750 fee was deducted in full. The Debtor, and therefore the estate, held only a reversionary interest in whatever amount of the Refund exceeded $750. As it turns out, Debtor held an interest in $4,718.00 of the Refund as of the petition date. The parties allocate the Refund between pre- and post-petition prior to the deduction of the attorney's fee. However, the Assignment removed the entire Refund from the reach of both the Debtor and the estate. Accordingly, the Court shall prorate the Refund based upon its value as of the petition date (less counsel's $750 fee). The calculation as to the balance of the Refund is that 70.14% of $4,718.00 (which is $3,309.21) shall be paid to the estate, and the Debtor shall be paid the remainder.

---

[19] *Steele, supra, available at* http://www.ksb.uscourts.gov/opinions/default.htm.

***Conclusion***

IT IS HEREBY ORDERED that Debtor's counsel shall receive $750.00;

IT IS FURTHER ORDERED that the Estate shall receive $3,309.21;

IT IS FURTHER ORDERED that the Debtor shall receive $1,408.79.

The Court further concludes that because Debtor previously paid $3,085.26 of the Refund to the Trustee, the Debtor is order to turnover $223.95 of the Refund.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS